UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges McCullough, Decker and Senior Judge Felton

DONNELL M. SPRUILL

                                                    MEMORANDUM OPINION[*]
v.       Record No. 1272-15-1                       PER CURIAM
                                                    FEBRUARY 16, 2016

CHESAPEAKE DEPARTMENT
 OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
E. Preston Grissom, Judge

(William E. Buyrn; Buyrn & Crook, on brief), for appellant.

(Ryan C. Samuel, Assistant City Attorney; Ayodele M. Ama,
Guardian *ad litem* for the minor children, on brief), for appellee.

Donnell M. Spruill (father) appeals the orders terminating his parental rights to three of his

children. Father argues that the trial court erred by finding that he "had not corrected the conditions

which [led] to the removal of his children from his custody . . . ." Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily

affirm the decision of the trial court. See Rule 5A:27.

                                    BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

On June 12, 2013, the Chesapeake Department of Human Services (the Department)

received a report that Jannifer Spruill (mother) was arrested on felony forgery charges and that

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the conditions of the home were deplorable. There also were concerns about a firearm in the home within the children's reach, a lack of food in the house, and lack of medical care for one of the children. The Department tried to investigate the complaint, but the parents were not cooperative.

On September 11, 2013, the Department received a report that one of the children had an asthma attack at school and had to go to the hospital. The school was not able to reach father or mother. There was no medication in the child's inhaler or at home.

On September 12, 2013, the Department received another report regarding the deplorable conditions of the home.

On September 13, 2013, the Department met with father. Father stated that he "frequents the home often" and was aware of the conditions of the home. The Department suggested that father and the minor children live in a hotel for a week until the conditions of the home improved. Father refused. He suggested that the children live at his sister's home, but there were thirteen individuals, including a heroin addict and a drug dealer, already living in the three-bedroom home.

On September 13, 2013, father and mother appeared before the circuit court for a custody hearing. On that date, the circuit court removed the parties' four minor children from their care and awarded custody to the Department due to concerns about the children's living conditions, the parents' substance abuse problems, mother's recent felony convictions, and the children's inadequate medical care. It found that there were no relatives willing or able to take the children. The circuit court remanded the foster care case to the Chesapeake Juvenile and Domestic Relations District Court (the JDR court).

The JDR court found that the children were abused and neglected. The JDR court ordered the parents to participate in marital counseling, individual counseling, parenting classes,

and visitation with the children. The JDR court also directed mother to obtain substance abuse treatment and find employment. Lastly, the JDR court told both parents to cooperate with the Department.

Two of the children had autism, and the other two children had behavior problems. One child was diagnosed with post-traumatic stress disorder, major depression, and attention hyperactivity disorder.

The parents completed the parenting classes and regularly visited with the children. However, in May 2014, the Department noticed that the parents were having inappropriate conversations and interactions with the children during visitations. The Department discussed the matter with the parents and gave them a new set of rules. Mother threw the visitation rules at the window where a representative was sitting. Mother also put her hand in a supervisor's face. The children's behavior deteriorated after visiting with their parents.

On July 28, 2014, father participated in a family partnership meeting. Father and mother had not provided documentation to the Department to show that they completed the required services. Father needed to provide documentation of stable housing and participate in marital counseling.

On August 20, 2014, the JDR court conducted a permanency planning hearing. It did not approve the goal of return home and continued the case to October 22, 2014 for the Department to revise the goal. Father had not provided the requested documentation for stable housing or names of friends or family who could care for the children.

After the August hearing, the Department and CASA worker met with father. Mother had tested positive for cocaine, so father said that he wanted to seek custody of his children on his own. The Department and CASA worker told father that he needed to provide them with a plan to show how he would care for the children and that he was financially able to support

them. They also wanted to conduct a home visit. Furthermore, father had to show that he could protect the children from mother until she completed her substance abuse treatment and counseling. Father did not do anything that was requested of him.

On October 22, 2014, father and mother appeared at the permanency planning hearing. Father still had not provided the necessary documentation. The JDR court found that father had made no significant improvements since the children's removal. The JDR court approved the goals of adoption for the children and ordered the Department to file petitions to terminate mother's and father's parental rights. The parents appealed.

After the JDR hearing, the social worker, guardian *ad litem*, and CASA worker met with father to discuss a plan for returning the children to his care. The Department was concerned about father and mother living together because of mother's substance abuse problems. They discussed father separating from mother and finding suitable living arrangements. Father agreed, but then failed to maintain contact with the Department, the guardian *ad litem*, and the CASA worker. On April 8, 2015, the JDR court terminated mother's and father's parental rights. The parents appealed.

On July 6 and 15, 2015, the parties appeared before the circuit court. The Department informed the circuit court that the parties had reached an agreement with respect to mother's and father's oldest child. The Department was not seeking termination of their parental rights with respect to that child because he was almost eighteen years old. At the hearing, both mother and father admitted having unauthorized contact with one of the children. The parents had stopped attending marital counseling, and family therapy had not occurred. Two children testified *in camera* and stated that they preferred to stay in their foster care home. After hearing all of the evidence and argument, the trial court determined that it was in the children's best interests to

- 4 -

terminate mother's and father's parental rights pursuant to Code § 16.1-283(C)(2). It approved the goals of adoption. This appeal followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the trial court erred in concluding that he had not substantially remedied the conditions that led to the children being placed in foster care and terminating his parental rights. Father was employed as an electrician with the same employer for the past five years. Although his mortgage was delinquent for several months, father testified that the house was not in foreclosure and he was current with his bills as of the final hearing. He notes that he completed the parenting classes, marital counseling, and individual counseling. He testified that he and mother had been together for twenty-five years and married for nineteen years. There was evidence that mother was enrolled in the drug court program and had been sober for several months. Father contends the trial court should not have terminated his parental rights to his three minor children.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

One of the reasons why the children came into foster care was because of their living conditions. Father had to prove that he could provide safe and stable housing. Although his house was no longer in foreclosure at the time of the hearing, he did not let the Department or CASA worker inspect the house until one week before the termination hearing, which was not enough time to prove that he could maintain a safe and suitable environment for the children. He simply showed the Department that his house was clean on one day, not that he could maintain the conditions of the home. The trial court found that father's actions were "too little, too late."

While the children were in foster care, the Department and the CASA worker expressed concern as to whether father was serious about assuming custody of the children. Although it was obvious that he loved them, he had not made much effort to regain custody of them. He did not follow through what he told the Department he would do, and he did not provide requested documentation. Despite numerous meetings with the Department and the CASA worker about the children, father did not meet their requirements. As of April 2015, the CASA worker reported that father still had done "nothing to move forward in getting his children." The trial court did not find father to be credible with respect to his plans for the future. It stated that father's statements were "more hope than it is any concrete plan, and that's the way it's been for the last – more than 12 months."

The children have special needs. There was no evidence that father was capable of meeting their needs. In fact, the evidence proved that father was having inappropriate conversations with the children during visitation. Furthermore, he had been absent from the children's lives for several years.

Additionally, the trial court was concerned about the parties' relationship. They were unstable. Father intended to stay with mother, despite the Department suggesting that he separate from her in order to provide a stable home for the children. The trial court said, "I haven't had any evidence with respect to understanding or getting a feel for a restabilization of their relationship." The trial court believed that the parents' efforts were not sincere, but were made to prevent their parental rights from being terminated.

The children had been in foster care for approximately two years, and father still was not in a position to have custody of the children. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Considering the totality of the circumstances, the trial court did not err in terminating father's parental rights to his three minor children.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.